NJProb 12C/D
(6/23)

# United States Probation Office
## United States District Court
## for the District of New Jersey

### Petition for Summons or Warrant for Individual under Supervision

February 13, 2024

**Name of Individual Under Supervision:** Adolphus Cato  **Docket Number:** 23-00186-001
**Reg. Number:** 40449-050  **PACTS Number:** 30899

**Name of Judicial Officer:**  THE HONORABLE WENDY BEETLESTONE
UNITED STATES DISTRICT JUDGE (ED/PA)
(JURISDICTION TRANSFERRED TO
THE HON. KAREN M. WILLIAMS ON MARCH 10, 2023)

**Original Offense:**  Count One: Conspiracy, 18 U.S.C. § 371, a Class D felony
Counts Three, Four, Six, Seven, and Eight: Bank Fraud; Aiding and Abetting,
18 U.S.C. § 1344 and 18 U.S.C. § 2, Class B felonies
Count Nine: Aggravated Identity Theft; Aiding and Abetting;
18 U.S.C. § 1028A(a)(1) and 18 U.S.C. § 2, a Class E felony

**Original Sentence:** Imposed on 06/21/2016; 80 months imprisonment followed by 5 years supervised release

**Current Custodial Status:** At liberty

**Special Conditions:** Financial Disclosure, New Debt Restriction, Special Assessment - $700, Restitution - $149,907.64

**Date Supervision Commenced:** 01/14/2022  **Date Supervision Expires:** 01/13/2027

**Assistant U.S. Attorney:** To be assigned

**Defense Attorney:** To be assigned

---

## PETITIONING THE COURT:

- ☐ To issue a warrant
- ☑ To issue a summons
- ☐ To amend a previously filed petition

## THE COURT ORDERS:

☑ The Issuance of a Summons (as recommended by Probation).
Date and time of initial appearance: March 12, 2024 at 2:00 p.m. in Courtroom 4A before Judge Karen M. Williams, U.S. District Judge.

☐ The Issuance of a Warrant. *THIS DOCUMENT SHALL BE SEALED UNTIL ARREST OF THE INDIVIDUAL UNDER SUPERVISION.*

☐ The petition dated _____ and filed with the Court on _____ is HEREBY AMENDED.

☐ No Action.

☐ Other.

_____   _____
Signature of Judicial Officer   Date

**COURT ACTION TO DATE:**

On March 9, 2023, the Honorable Wendy Beetlestone, U.S. District Judge, Eastern District of Pennsylvania, ordered a transfer of jurisdiction of Mr. Cato's case to the District of New Jersey. On March 10, 2023, the Honorable Karen M. Williams accepted jurisdiction of the case.

On August 18, 2023, a *Report on Offender Under Supervision* was submitted to the Honorable Court alleging that Mr. Cato was in non-compliance with paying his restitution as ordered. The U.S. Probation Office requested no action be taken since Mr. Cato eventually became compliant. The Honorable Court concurred with the recommendation on August 28, 2023.

**DETAILS OF VIOLATIONS:**

| Violation Number | Nature of Noncompliance |
|---|---|
| 1 | The individual under supervision has violated the mandatory supervision condition which states **'The defendant not commit another federal, state, or local crime.'** |

According to the offense report from the Winslow Township Police Department, on January 11, 2024, an officer was dispatched to a residence in reference to a motor vehicle theft in progress. Upon arrival, the officer met with the victim, who stated that he owns three disabled motor vehicles located in his backyard. He reported that he was notified by one of his neighbors that an unknown tow truck came onto his property on the previous day and stole one of the vehicles, a 2006 Toyota Camry Solara. This neighbor contacted him today to advise him that the same tow truck was now on his property attempting to take another vehicle, a Lincoln LS. The victim responded to his residence.

Upon arrival, the victim observed his Lincoln LS on the back of the tow truck. He blocked his driveway as to not allow the tow truck driver to leave. The victim made contact with the driver, identified as Zaire Davis. Mr. Davis told the victim that he worked for 1st Class Auto Salvage and had a request from Adolphus Cato to remove three vehicles from the property. Mr. Davis did not have any paperwork to confirm the request, and advised the victim that his boss, "Monja," sent him to retrieve the vehicles at the request of Mr. Cato. The victim told Mr. Davis that he owns the three vehicles and that he did not request anyone to take the vehicles.

Mr. Davis contacted his boss, Monja, to inform him of the circumstances and Monja contacted Mr. Cato. Mr. Cato responded to the location to speak to the victim. Upon arrival, Mr. Cato spoke to the officer and told him that he owns a business that buys junk cars and sells them to salvage yards. Mr. Cato told the officer that he received a request from a female identified as "Donna" requesting for him to remove three cars from her property. He further told the officer that he was solely the "middle man" who was hired to contact a salvage yard and have the junk cars removed. He noted that in return, he would receive $50 for each car as a processing fee.

Mr. Cato reported that he never met with "Donna" in person nor did he ever confirm any of her information. He also told the officer that "Donna" never provided him with any proof of residence nor proof of ownership of the vehicles. Mr. Cato explained that he contacted 1st Class Auto Salvage in Trenton, to tow the vehicles to a scrap yard. Mr. Cato reported that he had the Toyota Camry

NJProb 12C/D – page 3
Adolphus Cato

Solara towed the previous day and was going to have the other two vehicle towed today. He also indicated that he was going to forward Monja the documentation for the vehicles after all three vehicles were towed.

Mr. Cato had the officer speak to "Donna," who told the officer that she resides at the residence and wanted the vehicles removed. When the officer questioned her regarding her name and other information, "Donna" hung up the phone. The officer learned that the victim's wife's name was Donna, and that the female was attempting to act as if she was in fact the victim's wife. Mr. Cato attempted to call "Donna" a second time, to no avail.

The officer spoke to Mr. Davis, who reiterated the statement he made to the victim. He further advised that to his knowledge, Monja sends him to retrieve vehicles after he confirms the paperwork and proof of ownership. He was unaware as to why his boss would send him to retrieve vehicles without any proof of ownership. Mr. Davis noted that on January 10, 2024, when he arrived at the residence to retrieve the Toyota Camry Solara, Mr. Cato was at the property speaking to a neighbor. Mr. Cato was acting as if he was the property owner. Mr. Cato stood by as Mr. Davis towed the vehicle. Mr. Davis took a photograph of the vehicle after same was loaded onto the tow truck per his work policy. Mr. Davis allowed the officer to see the vehicle and Mr. Cato was observed in the photograph wearing a yellow high-visibility vest. Mr. Davis told the officer that he has towed vehicles in the past for Mr. Cato and that he believed he was conducting suspicious activity.

The officer spoke to Monja, who stated that he owns 1st Class Auto Salvage and that he purchases junk cars in order to sell parts and scrap vehicles. He stated that he has worked with Mr. Cato in the past and tows one to two cars weekly for him. He noted that Mr. Cato contacted him and advised him that he would sell him the three cars at the victim's residence. Monja offered him $600 per vehicle, for a total of $1,800. Mr. Cato told Monja that he had all the paperwork for the vehicles and would provide it to him after the vehicles were towed off the property. Monja stated that he sent his driver to the property on January 10, 2024, to tow the Toyota Camry Solara and sent him back again on January 11 to retrieve the other two vehicles. Monja told the officer that he would return the Toyota Camry Solara to the owner.

The officer attempted to locate the registered owner of the number belonging to "Donna," to no avail.

Mr. Cato was arrested and charged with two counts of theft of a motor vehicle < $75,000 and conspiracy – agree/engage in conduct constituting a crime -theft of a motor vehicle < $75,000. Mr. Cato was released this same day on a summons.

The Probation Office has determined this conduct constitutes a **Grade B violation.**

**INDIVIDUAL UNDER SUPERVISION'S COMMENTS AS TO ALLEGED VIOLATION(S):**

Mr. Cato contacted the U.S. Probation Office on January 11, 2024, to report he was arrested by the Winslow Township Police Department for theft of a motor vehicle. No additional comments were made.

**STATUTORY PROVISIONS AND CASE LAW:**

The individual under supervision's exposure to all penalties is presented in the Appendix.

Pursuant to 18 U.S.C. § 3583(i), the power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the individual under supervision to serve a term of imprisonment and, subject to the limitations in subsection (h) of 18 U.S.C. § 3583, a further term of supervised release, extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation. Reference is made to the Third Circuit's ruling in *U.S. v. Merlino*, 785 F.3d 79 (3rd Cir. 2015).

18 U.S.C. § 3583(e)(3) provides for revocation of a term of supervised release if the court finds by a preponderance of the evidence that the individual under supervision violated a condition of supervised release. Accordingly, the court will require the individual under supervision to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously spent on post-release supervision.

Cases in which the original offense of conviction was committed on or after April 30, 2003, are subject to the provisions of the PROTECT Act (Pub. L 108-21, 117 Stat. 650), which amended 18 U.S.C. § 3583(e)(3) with regard to the custodial exposure upon revocation. The amount of custodial time available to the Court upon revocation is the maximum term authorized at 18 U.S.C. § 3583(e)(3). This available time is not reduced by the custodial time imposed as a result of any prior revocation of supervision. Reference is made to the Third Circuit's ruling in *U.S. v. Williams*, 675 F.3d 275 (3rd Cir. 2012).

Pursuant to 18 U.S.C. § 3583(e)(3), if revoked, Adolphus Cato is facing a maximum statutory penalty of 3 years imprisonment for violating the term of supervised release attached to a conviction for a Class B felony.[1]

Pursuant to 18 U.S.C. § 3583(h), when a term of supervised release is revoked and the individual under supervision is required to serve a term of imprisonment, the court may include a requirement that the individual under supervision be placed on a term of supervised release after imprisonment. The amount of time available for reimposition of supervised release in cases in which the original offense of conviction was committed on or after April 30, 2003, is the maximum term of supervision allowed by statute for the original offense of conviction minus any term of imprisonment imposed upon revocation plus custodial time ordered on prior revocations.

The individual under supervision is subject to a separate prosecution. The Supreme Court has ruled in *Setser v. U.S.*, 132 S. Ct. 1463, 1468-70 (2012) that a District Court may order its sentence to run either concurrently or consecutively to a not-yet-imposed state court sentence.

---

[1] On June 21, 2016, the defendant was sentenced after pleading guilty to one count of Conspiracy (Count One of the underlying indictment), five counts of Bank Fraud (Counts Three, Four, Six, Seven, and Eight), and one count of Aggravated Identity Theft, Aiding and Abetting (Count Nine). The Judgment in this matter simply reflects a term of imprisonment of 80 months and five years of supervised release. It does not specify the terms of supervised release on each count of conviction. Consequently, the U.S. Probation Office will not assume Mr. Cato was serving multiple concurrent terms of supervised release at the time of the alleged violation. (More specifically, because the statutory minimum term of supervised release resulting from conviction on Counts One, Three, Four, Six, Seven, and Eight is one year, the Probation Office will not assume he is serving multiple concurrent terms of supervised release of more than one year on each of these counts. The record is clear only in that he is serving *at least one* (5-year) term of supervised release. Additionally, it is noted that the underlying conviction on Count Nine is subject to a statutory maximum term of supervised release of one year. Because the non-compliance is alleged to have occurred in the second year of supervision, Mr. Cato could not have violated any term of supervised release resulting from his conviction on Count Nine.)

**POLICY STATEMENT/GUIDELINE PROVISIONS:**

The individual under supervision's exposure to all penalties is presented in the Appendix.

The U.S. Sentencing Commission has promulgated specific policy with respect to probation and supervised release violations. Pursuant to § 7B1.4(a) of the guidelines, with a Criminal History Category of III and a Grade A violation, the individual under supervision faces a guideline range of 18 to 24 months custody. For a Grade B violation, the individual under supervision faces a guideline range of 8 to 14 months custody. For a Grade C violation, the individual under supervision faces a guideline range of 5 to 11 months custody.

Upon a finding of a Grade A or B violation, pursuant to USSG § 7B1.3(a)(1), the court will revoke supervised release.

Upon a finding of a Grade C violation, pursuant to USSG § 7B1.3(a)(2), the court may (A) revoke probation or supervised release or (B) extend the term of probation or supervised release and/or modify the conditions of supervision.

Pursuant to USSG § 7B1.3(c)(2), in the case of a Grade B or C violation, where the minimum term of imprisonment determined under § 7B1.4 is more than six months but not more than ten months, the minimum term may be satisfied by (A) a sentence of imprisonment or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in § 5C1.1(e), provided that at least one-half of the minimum term is satisfied by imprisonment.

Pursuant to USSG § 7B1.3(f), any term of imprisonment imposed upon the revocation of probation or supervised release will be ordered to be served consecutively to any sentence of imprisonment that the individual under supervision is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release.

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

SUSAN M. SMALLEY, Chief
U.S. Probation Officer

By: D. ANNIE CRUZ
U.S. Probation Officer

/ dac

APPROVED:

_____  2/13/2024
JOSEPH A. DAGROSSA           Date
Assistant Deputy Chief U.S. Probation Officer

# APPENDIX
## Statutory and guideline exposure

VIOLATION GRADE:              A
CRIMINAL HISTORY CATEGORY:   III

|  | **Statutory Provisions** | **Guideline Provisions** |
|---|---|---|
| CUSTODY: | Up to 3 years | 18 to 24 months |
| SUPERVISED RELEASE: | Up to 5 years (less any term of imprisonment imposed upon revocation, plus custodial time imposed on prior revocations) | Up to 5 years (less any term of imprisonment imposed upon revocation, plus custodial time imposed on prior revocations) |

VIOLATION GRADE:              B
CRIMINAL HISTORY CATEGORY:   III

|  | **Statutory Provisions** | **Guideline Provisions** |
|---|---|---|
| CUSTODY: | Up to 3 years | 8 to 14 months |
| SUPERVISED RELEASE: | Up to 5 years | Up to 5 years (less any term of imprisonment imposed upon revocation, plus custodial time imposed on prior revocations) |

VIOLATION GRADE:              C
CRIMINAL HISTORY CATEGORY:   III

|  | **Statutory Provisions** | **Guideline Provisions** |
|---|---|---|
| CUSTODY: | Up to 3 years | 5 to 11 months |
| SUPERVISED RELEASE: | Up to 5 years (less any term of imprisonment imposed upon revocation, plus custodial time imposed on prior revocations) | Up to 5 years (less any term of imprisonment imposed upon revocation, plus custodial time imposed on prior revocations) |